Edward G. NOVAK, Acting Commissioner of Public Safety, State of Minnesota, Petitioner,

v.

The Honorable John J. KIRBY, Judge of the Municipal Court of Ramsey County, Respondent.

No. 49903.

Supreme Court of Minnesota.

Dec. 14, 1979.

Rehearing Denied Jan. 14, 1980.

Warren Spannaus, Atty. Gen., Eric B. Schultz, Deputy Atty. Gen., Frederick S. Suhler, Jr., Sp. Asst. Atty. Gen., St. Paul, for petitioner.

Karen C. Shimon, St. Paul, for respondent.

SHERAN, Chief Justice.

This appeal, involving a petition for writ of prohibition, arises from the revocation of a driver's license by the Acting Commissioner of Public Safety in contravention of an order of the Ramsey County Municipal Court. We deny the petition for prohibition and find within the municipal court the authority to stay the revocation of drivers licenses pursuant to Minn.Stat. § 169.121, subd. 5 (1978).

On February 2, 1979, the Administrator of the Ramsey County Municipal Court forwarded a certificate of conviction [1] to peti-

1. Minn.Stat. § 169.121, subd. 7 (1978) provides in relevant part:
   On behalf of the commissioner of public safety a court shall serve notice of revocation on

a person convicted of a violation of this section. The court shall take the license or permit of the driver, if any, or obtain a sworn affidavit stating that the license or permit

tioner Edward G. Novak, Acting Commissioner of Public Safety (Commissioner), reporting the guilty plea of defendant to driving a motor vehicle while under the influence of alcohol.[2] Because defendant had been convicted under the same statute six months earlier, municipal court Judge John J. Kirby (respondent) sentenced him to a $300 fine, 25 days imprisonment, and revoked his driver's license for 90 days, as provided by Minn.Stat. § 169.121, subd. 4 (1978).[3]

In addition to the certificate of conviction, Judge Kirby forwarded a letter to the Commissioner stating that in view of the results of an alcohol assessment report[4] the municipal court, exercising the discretion afforded by Minn.Stat. § 169.121, subd. 5 (1978),[5] had stayed execution of defendant's sentence. Despite this letter from Judge Kirby, the Commissioner, acting pursuant to Minn.Stat. § 171.17 (1978),[6] revoked the defendant's driver's license on February 12, 1979.

Defendant contested the revocation of his driver's license by filing a notice of motion and motion with the municipal court. Accordingly, Judge Kirby served upon the Commissioner an order to show cause as to why defendant's prayer for relief should not be granted. Finding the Commissioner's subsequent response unsatisfactory, Judge Kirby ordered the Commissioner either to withdraw defendant's notice of revocation or to appear personally before the court to show why he should not be held in

cannot be produced, and send it to the commissioner with a record of the conviction * * *.

2. Minn.Stat. § 169.121, subd. 1(a) (1978) states: "It is a misdemeanor for any person to drive, operate or be in physical control of any motor vehicle within this state: (a) When the person is under the influence of alcohol; * * *."

3. Minn.Stat. § 169.121, subd. 4 (1978) provides: Every person who is convicted of a violation of this section or an ordinance in conformity therewith within three years of any previous such conviction shall be punished by imprisonment for not more than 90 days, or a fine of not more than $500, or both, and his driver's license shall be revoked for not less that 90 days.

4. In relevant part, Minn.Stat. § 169.126 states: Subdivision 1. An alcohol problem assessment shall be conducted in counties of more than 10,000 population and an assessment report submitted to the court by the county agency administering the alcohol safety counseling program when:

(a) The defendant is convicted of an offense described in section 169.121;
* * * * * *

Subd. 2. The assessment report shall contain an evaluation of the convicted defendant concerning his prior traffic record, characteristics and history of alcohol problems, and amenability to rehabilitation through the alcohol safety program. The assessment report shall include a recommendation as to a treatment or rehabilitation program for the defendant. * * *

Subd. 3. The assessment report required by this section shall be prepared by a person knowledgeable in diagnosis of chemical dependency.
Subd. 4. The court shall give due consideration to the agency's assessment report.

5. Minn.Stat. § 169.121, subd. 5 (1978) provides: The court may stay imposition or execution of any sentence authorized by subdivision 3 or 4 on the condition that the convicted person submit to treatment by a public or private institution or a facility providing rehabilitation for chemical dependency licensed by the department of public welfare. A stay of imposition or execution shall be in the manner provided in section 609.135. The court shall report to the commissioner of public safety any stay of imposition or execution of sentence granted under the provisions of this section.

6. Minn.Stat. § 171.17 (1978) provides in relevant part:

The department shall forthwith revoke the license of any driver upon receiving a record of such driver's conviction of any of the following offenses:
* * * * * *
(2) Operating a motor vehicle while under the influence of intoxicating liquor or narcotic drug;
* * * * * *

Upon revoking the license of any person, as hereinbefore in this chapter authorized, the department shall immediately notify the licensee, in writing, by depositing in the United States postoffice a notice addressed to the licensee at his last known address, with postage prepaid thereon.

contempt. The Commissioner thereupon filed for a writ of prohibition to stay proceedings in the Ramsey County Municipal Court.

Under Minn.Stat. 169.121, subd. 5 (1978), the municipal court may stay the imposition or execution of any sentence resulting from a conviction for driving while under the influence of alcohol. The Commissioner, however, believing that license revocation authorized under § 171.16 is an administrative sanction, argues that the stay provision only applies to the criminal penalties of fine and imprisonment. Nevertheless, the Commissioner agrees that if that provision does empower the municipal court to stay the revocation of a license, then his action in contravention of Judge Kirby's disposition was ill-advised. Likewise, the attorney for the offending driver acknowledges that the municipal court would have no authority to order a stay of revocation of license if the legislature did not so intend. The question, then, becomes entirely one of ascertaining legislative intent.

In the past, this court recognized that penalties from motor vehicle violations were both criminal and administrative, the Commissioner of Public Safety having authority over the latter. See e. g., Martinka v. Hoffmann, 214 Minn. 346, 9 N.W.2d 13 (1943); State v. Moseng, 254 Minn. 263, 95 N.W.2d 6 (1959). Yet even construing the statute in a light most favorable to appellant, the Commissioner never had exclusive authority, since subdivision 4 empowers the judge to increase the period for license revocation beyond the 90-day statutory minimum.

In 1969, the legislature amended chapter 169 by conferring upon the court the right to stay the imposition or execution of sentences.[7] 1969 Minn.Laws ch. 744, § 1.

Sensing that the enactment of the stay provision signalled a legislative desire to alter the jurisdictional balance between court and commissioner, we observed in 1975 that license revocation "is automatically imposed as a *criminal* penalty upon conviction of a § 169.121 violation. It is triggered by the outcome of the criminal proceeding and is imposed through the judicial system." *State, Dep't of Public Safety v. Mulvihill,* 303 Minn. 361, 368, 227 N.W.2d 813, 817–18 (1975).

We agree that *Mulvihill* authorizes the trial courts to stay the revocation of drivers licenses. Because the legislature has not since amended the statute in a manner inconsistent with *Mulvihill,* we assume under the axioms of judicial construction that the legislature approved of *Mulvihill's* imprimatur. *Roos v. City of Mankato,* 199 Minn. 284, 271 N.W. 582 (1937). We thus determine inescapably that the legislature authorized the courts to stay the revocation of licenses as a means of encouraging treatment for alcoholism.

We are aware of no amendments to the applicable law enacted since *Mulvihill* which would impact on its holding as it bears on the ascertainment of legislative intent. To the contrary, in 1976 the legislature enacted Minn.Stat. § 169.126 which requires the courts to obtain and give due consideration to alcohol problem assessments of defendants convicted under § 169.121. 1976 Minn. Laws ch. 298, § 4. The enactment of the alcohol problem assessment provision supports our view that the legislature granted the courts additional authority to assume a more treatment-oriented posture.

The legislature has paramount authority to deal with the revocation of drivers licenses to the exclusion of the Commissioner of Public Safety. We therefore suggest that

---

7. In 1971, the legislature amended what is now § 169.121, subd. 5 to require the courts to report stays of execution of sentence to the Commissioner. 1971 Minn.Laws ch. 244, § 1. This court interpreted the amendment as suggesting by implication that stays of imposition need not be similarly reported; however, we invited the legislature to clarify the statute in the event the holding was contrary to legisla-

tive intent. *Drake v. Friedman,* 307 Minn. 1, 238 N.W.2d 210 (1976). Forthwith, the legislature amended § 5 to require reports of both stays of execution and imposition. 1976 Minn. Laws ch. 298, § 2. This last amendment recognized that only by apprising the Commissioner of all traffic violations could the Department of Public Safety fulfill its recordkeeping function.

doubts as to the correctness of our interpretation may be resolved by submitting the question to the legislature in its forthcoming session.

Because we are confident that the Commissioner will accede to this interpretation and that the concerns of the trial court will be satisfied by this resolution, the application for writ of prohibition shall be dismissed.

OTIS, Justice (dissenting).

The majority opinion relies on our holding in *State, Dep't of Public Safety v. Mulvihill,* 303 Minn. 361, 368, 227 N.W.2d 813, 817–18 (1975) for the proposition that trial courts have discretion to revoke or not to revoke the driver's license of a defendant convicted of driving while under the influence of alcohol. The majority notes that the legislature has not amended the statute in a manner inconsistent with the *Mulvihill* decision written in March of 1975.

I respectfully disagree on both grounds. All that *Mulvihill* held was that the Commissioner of Public Safety was justified in revoking the license of three drivers who refused to submit to chemical tests as provided by Minn.Stat. § 169.123, subd. 4 (1974). In observing by way of dictum that revocation under Minn.Stat. § 169.121, subd. 3 (1974) is "triggered by the outcome of [a] criminal proceeding," we stated that under § 169.121 a license revocation "is *automatically* imposed as a criminal penalty upon conviction" (emphasis altered). We did not say that the court had *discretion* to revoke or not revoke but stated that revocation is mandatory.

Nor can I agree that the legislature has not amended the statute in a manner inconsistent with what the majority reads into *Mulvihill.* In April 1976 by adopting 1976 Minn.Laws ch. 341, § 1, the legislature amended Minn.Stat. § 169.121, subd. 3 (1976), by adding this language (emphasis added):

> Any person whose license has been revoked pursuant to section 169.123 is not subject to the *mandatory* revocation provisions of this subdivision.

As to licenses revoked under Minn.Stat. § 169.123 (1974) with which our court was dealing in *Mulvihill,* the legislature, by this amendment, acquiesced in *Mulvihill* with respect to the implied consent law. However, as to revocation for convictions under Minn.Stat. § 169.121 (1978), the amendment expressly states that revocation is "mandatory."

A second significant amendment occurred in April 1978 when the legislature adopted 1978 Minn.Laws ch. 727, § 2. That amendment introduced this language as Minn. Stat. § 169.121, subd. 7 (1978) (emphasis added):

> *On behalf of the commissioner of public safety* a court shall serve notice of revocation on a person convicted of a violation of this section. The court *shall* take the license or permit of the driver, if any, or obtain a sworn affidavit stating that the license or permit cannot be produced, and send it to the commissioner with a record of the conviction and issue a temporary license effective only for the period during which an appeal from the conviction may be taken. No person who is without driving privileges at the time shall be issued a temporary license and any temporary license issued shall bear the same restrictions and limitations as the driver's license or permit for which it is exchanged.
>
> The commissioner shall issue additional temporary licenses until the final determination of whether there shall be a revocation under this section.

In my opinion the legislature could not have expressed in clearer language its intent to reaffirm the commissioner's function of revoking drivers' licenses following convictions for driving under the influence of alcohol. It not only explicitly provided that the court was acting on behalf of the commissioner but went on to say "the court *shall* take the license or permit of the driver * * * and send it to the commissioner * * *." (Emphasis added.)

The statutes are elsewhere replete with expressions of legislative intent to make

revocation mandatory for convictions under Minn.Stat. § 169.121 (1978). Subdivision 3 of that statute states that the driver's license of a first offender "*shall* be revoked for not less than 30 days" and for more serious offenses it "*shall* be revoked for not less than 90 days." (Emphasis added.)

Under Minn.Stat. § 171.17 (1978) the legislature has provided "The *department shall forthwith revoke* the license of any driver upon receiving a record of such driver's conviction" for operating under the influence of intoxicating liquor. (Emphasis added.)

Under Minn.Stat. § 171.16, subd. 2 (1978) the court's authority is limited to simply making a recommendation by this language (emphasis added):

Commissioner shall suspend. *The court may recommend* the suspension of the driver's license of the person so convicted, and *the commissioner shall suspend* such license as recommended by the court, without a hearing as provided herein.

I respectfully submit that the intent of the legislature to make revocation an automatic administrative function could not be spelled out in more unequivocal language and I would therefore grant the writ.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.